is now in session. Honorable Justice Michael B. Irwin, please come to the stage. Good morning. If I want to apologize on behalf of Amtrak, not Metro, all of you must not take Metro this morning. But I did, unfortunately. And there was an accident near Clinton and it took them forever to remove the car, blocking the tracks, and then there were 24 trains blocked. So I apologize. Madam Clerk, please call the first case. 15-005-4, people working, Christopher Irwin. Please stand by. Good morning, Your Honors. Chris Bendick, the appellant, Christopher Irwin. Good morning, Your Honors. Jesse Guth, Assistant State's Attorney, on behalf of the people. Okay. Approximately how much time do you wish? 15 to 20 minutes. Okay, thank you. May it please the Court, good morning, Your Honors, Counsel. My name is Chris Bendick from the Office of the State Appellate Defender. I represent the appellant, Christopher Irwin. With this Court's permission, my plan is to focus on the course of investigation and mug shots issues, but we'll briefly touch upon the prosecutorial misconduct as well. Christopher Irwin did not receive a fair trial. Whether it was the trial court allowing the prosecutor to elicit inadmissible hearsay or permitting the prosecutor to present prejudicial and irrelevant mug shots of Christopher or the prosecutor disobeying two pretrial motion to eliminate rulings, Christopher Irwin did not receive a fair trial and his trial was the antithesis of a fair trial. Okay, why is it not appropriate when the police testify that they're responding to a call? Let's say they're responding to a call. On their way there, instead of going to the call, they stop a car that ran a red light. And then they not only order the driver out of the car, they order all the occupants out of the car with their hands up. Wouldn't the jury wonder why they did that if they didn't know it was a call of shots fired? So in that situation, Your Honor, it still just needs to be explained that they are proceeding to a radio call, they see a car stopped, and in this situation, the driver did not have a license. Well, but the call wasn't a car speeding or a driver without a license. So they get a call about a crime, they're on their way there. Instead of going there, they stop a car that ran a red light. Isn't it necessary to say we got a call of shots fired? That's why we stopped a car that sped through a red light and ordered everybody out of the car with their hands up. No, it is not necessary to do that. And in fact, it goes to the, in this case, what's at issue is that Christopher possessed a gun. He was found with a gun inside the car, and shots fired goes to the issue at hand, that someone inside that car had a gun. And in fact, the trial court didn't limit it for its non-hearsay purpose in this case,  and we're not even conceding that it's a proper course of investigation, because all you needed to hear in this case was radio call, proceeded to 17th and Baton and Maywood, car ran a red light, it was speeding, we decided to curb it. Both officers Escamilla and Deering clearly testified that they did not stop the car because it was shots fired. It was because it was speeding, because it ran a red light. But in that situation, you should have a limiting instruction saying we're considering it for a non-hearsay purpose. I'm confused. We know they got a call of shots fired. And the explanation is we saw a car run a red light, so instead of responding to a call of shots fired, we stopped the car that ran a red light. No, what the jury should have heard here is what trial counsel suggested and what this court has found is appropriate and people be willing. If it goes to the matter at issue, what you should hear is heard a radio call, stopped the car because it was speeding and because it ran a red light, and proceeded with the investigation from there, found a gun. Because it goes to the matter at issue, that's here why it's so prejudicial. It's because you heard this is other crimes evidence, not just going to a possession of a gun. The jury heard he might have fired shots at these people at this, wherever the original location of the shots fired call was. So this isn't just a violation of the course of investigation, exception to hearsay. This is other crimes evidence because the judge specifically denied trial counsel's request for a limiting instruction telling the jury you can't consider this for its hearsay purposes. Trial court denied that request. Well, they didn't offer it for hearsay purposes. They didn't offer it for the truth. Well, that's absolutely what they did it for because in opening statements, the prosecutor linked the shots fired call to, quote, fleeing quickly from that location, fleeing from that vicinity. They are tying this car specifically to having caused those shots fired. It's exactly going to that hearsay purpose. Do they sit on any evidence at all connecting the shots to this car? What you have is three officers testifying, both Dearing, Escamilla, and Peppers, all testifying that they heard a shots fired call, went to this area, see this car. So there's nothing that connected the shots fired that was on the radio to any of the individuals in this car. Correct. However, this is why the shots fired, it left it out for the jury. We've got this gun possession case. The jury hears, oh, we heard a radio call, shots fired, three separate times by three separate officers plus multiple times in argument. The jury is wondering, is this a shots fired case or is this a gun possession case? Well, you didn't confess the evidence. It's sufficiency to convict, did you? For possession of a gun? Right. We admit that regarding sufficiency, the standard for sufficiency, that it did meet it given the splendid testimony by Officer Escamilla about having seen Christopher dip his shoulder and the gun being found at the scene. However, this is a harmless error analysis because this was both preserved via objection pretrial and post-trial. So it's the state's heavy burden to demonstrate this had no effect on the outcome and it absolutely had an effect on the outcome where the evidence was so thin that you only had possibly Officer Escamilla stating, oh, I saw him dip his shoulder. During Huckers, no one ever saw a gun in Christopher's hands. It's a possession charge. So how did the shots fired radio communication tip the balance on whether the officer saw the gun in the proximity of the passenger in the car who happened to be the defendant? Well, it doesn't necessarily have to tip the balance. It's a harmless error analysis that the state must demonstrate that it had no effect on the outcome at trial. And in order to fire a gun, you have to possess it. The jury hears shots fired half a dozen times during trial. Well, there was another occupant in the car who had a gun. Correct, Your Honor. And Christopher was the only defendant in front of that jury. Right. But they heard about the other defendant fleeing who had a gun, right? And there's a second gun. The jury heard a lot of things about what happened at night causing at least three separate police responses to that area and they definitely have the defendant and the other occupants in the car pulled over, correct? Correct. I mean, wouldn't a jury be curious as to, here's a car that runs a red light or goes through a red light and all of a sudden we have three squad cars converging on them like a cavalry? Well, all we need to know, and this is clear for people to be aware of, where it goes to the issue at hand, if we're doing this for the course of investigation exception to hearsay, we say got a radio call, went to the area, found the defendant essentially. And in this situation we have another explanation for why they stopped the car. It would be a different situation if they testified, oh, we stopped this car because it matched the description of a shots fired. But we have no description of any car on the shots fired call and they're going to the area, car speeding, goes through a red light. That's all the jury needed to do, especially if it was coming in for its non-hearsay purpose. But we know it came in substantively because the trial court denied the limiting instruction. So it's being used for its substantive inadmissible hearsay purpose. What should have occurred, even if it was coming in for the non-hearsay purpose, is a limiting instruction should have been given to the jury. That didn't occur because we know the trial court denied that request. This is a harmless error analysis. The state has not demonstrated its heavy burden, given the paucity of evidence against Christopher, that this had no outcome on the trial. The state says the evidence is overwhelming. You just said it was paucity of evidence. Please explain. No one ever saw this gun in Christopher's hand. There's no forensic evidence tying the gun to Christopher. We have this thin evidence of, oh, he might have dipped his shoulder as I was approaching the car. That's it. Guns found on the floorboard. Happens to be at the front passenger seat floorboard. It could have been anyone's gun in that car. Took no fingerprints. Correct. No forensic evidence ties this. No statements. Do you have any case law that says that's not sufficient for constructive possession? Regarding harmless error analysis? No, regarding constructive possession. That would be sufficient for the sufficiency of the evidence analysis for constructive possession. However, for a harmless error analysis, the state cannot demonstrate it had no effect on the jury's verdict. Turning to another instance where the trial court allowed irrelevant and highly prejudicial evidence to be considered. There was no question at trial as to whether Christopher was an occupant in the car or how the officers originally identified him. Despite the officers how they originally identified him being not at issue, the trial court allowed the prosecutor to elicit from three separate officers highly prejudicial identifications through mug shots. The state's sole intention here was to prejudice Christopher. And it's shown through this quote that telling the jury, quote, he looks different now than he did on that night. The defendant is not as he sits here in his little. And then the trial court went on to describe the difference between the mug shots and how he looked in court. Whether Christopher looked different in court than he did on the night of the offense was totally irrelevant to this case. Didn't an officer say that though? I'm sorry. Didn't the police officer testify that he looks different in court today? Absolutely he did. And there's no reason. What's the relevance to that testimony in this case? The police officer? Yes. He was asked to identify the defendant. Yes. Right. And he said he looks different in court today. He looks different than he looked on the night of the offense, but he's still Christopher Irwin. And it has no where he. But the jury doesn't know that. The jury couldn't sit there and say, gee, maybe they got mixed up the four guys in the car. They mixed them all up. You have three separate. They showed him a picture of the night he was arrested, correct? They showed him a picture of mug shots of the night. Well, two of the officers. When was the picture taken? We believe it was taken on March 4th. Now, two of the officers testified it was how he looked on the night of the offense. The third officer gave, I'd say, ambiguous testimony. This is an actual photo of the dead defendant when he was arrested. But the picture was taken as a result of his arrest for this offense that he was on trial for, correct? That's what the record seems to indicate, Your Honor, yes. Well, does it seem to indicate anything other than that? This is for what was presented to the jury. I know your argument is it's a mug shot. But it was taken the day he got arrested for this offense that he was on trial for, correct? We believe so from the record. But it did not indicate that this is a picture taken by law enforcement from a previous arrest or criminal investigation, does it? The second district found. Wait, before you tell me what everybody found, just answer my question. It was not a picture, and the jury was not informed, or there was no indication that the picture was from a previous encounter with law enforcement. Correct or not correct? They were not specifically told that this was from prior crimes. However, when a jury receives a front profile and a side profile, every jury knows that's mug shots. The second district has said that since 1979. A jury is not able to distinguish when they see mug shots. They immediately go to other crimes. But the testimony was, in laying a foundation for these photographs, that these were the photographs taken of him after his arrest, right? We had two officers who testified that this is how he looked, both daring and edemitis. The third one, Escamilla, stated this is an actual photo of the defendant when he was arrested. Now, I think that can be interpreted two ways, whether this is from how he looked when he was arrested, or this was what we took after he was arrested. The problem is, the state is, if they had no intention of trying to prejudice Christopher here, and not having it in a mug shots format, they were taking a single photo. Is this Christopher, the guy that you arrested on March 4th? Sure. But you know what? It would have been okay if they just had the forward-facing shot with no information on the bottom, and said to the officers, is this how the defendant looked on the night you arrested him? It's way less prejudicial. I may still be contesting that, but when you put a front profile and a side profile, where every jury knows this is mug shots, and you don't just do it once, you do it three times, why do you have to have three officers identify mug shots? But it isn't relevant. What's relevant is whether it's a shot of what he looked like that night, just the one face-forward shot. I still, at the trial, there was an indication by the defense attorney that this was just to assume as somebody who's a tough, tough guy, a thug. Isn't that correct? Correct, Your Honor. And there's no relevance for these photos here. And as I described, the way they presented this evidence shows the only goal was to prejudice Christopher. And the state has cited no case where identification is not at issue. Typically with these mug shot cases, that's how the original identification occurred. We don't have that here. We know Christopher's in the car. No one's debating that. How would you react to Justice Miller's comment that in People v. Armand, A-R-M-A-N, that mug shot evidence tending to inform the jury of a defendant's commission of other unrelated criminal acts should not be admitted? Clearly this was not a photograph indicating other unrelated criminal activity. Would you agree with that? When you have this format, I don't, Your Honor, because when you see a front and side profile of mug shots, it's left for the jury. Why are they using it three times in this case? It's clearly to prejudice Christopher. The difference between how he looked on the night of defense, the prosecutor herself said it when she's describing how, quote, the defendant is not as he sits here in his little. What about the situation that in evidence was taken by the jury for their deliberations? I'm sorry, Your Honor. It was taken back to the jury when they deliberated. That is another problem here is that in mug shot cases, typically this is not given to the jury. So not only should it not have come in as evidence or limiting instruction should have been given, it should not have been provided to the jury. So there's multiple ways that there was error, and the state has not demonstrated that this is harmless error. So if the court had said something which it didn't, it might have made it less prejudicial. Correct, Your Honor. And as you're asking Justice Price or Pierson, the state purposely chose to use these mug shots right after it had elicited inadmissible other crimes evidence in questioning Officer Adamidas. Asked him, hey, where do you recognize the defendant from on redirect examination? And Officer Adamidas said, well, it was street encounters, sustained objection. That was in violation of a pretrial motion to eliminate. Street encounters does not mean other crimes. For the jury, it does give the appearance of other crimes. Multiple street encounters, and you are not allowed to admit that, and that's why it was the subject of a pretrial motion to eliminate, and it was granted. Well, if he had said previous arrests, you're getting closer to your argument. But other encounters. But it was a motion to eliminate, wasn't it, that the judge said? And they said they weren't going to use the word encounter. The state agreed not to, and the trial court ruled that this could not be mentioned. It was mentioned, and then immediately afterwards, mug shots. Is this how it looked on March 4th? So the state knew what it was doing here. It was trying to play off this impermissible other crimes evidence. This is not the only time that the prosecutor violated a pretrial motion to eliminate. Pursuant to that same motion, the court prohibited the state from commenting on Christopher's post-arrest silence. In violation of that order, the prosecutor rebuttal argument told the jury, quote, Christopher doesn't alert the officer for his own, for her own safety.  He doesn't say anything about that gun. Trial court quickly sustained the objection to the violation of the motion to eliminate. When appealed, the state incorrectly argues that this is subject to some sort of invited air doctrine. There was no improper argument by trial counsel. Thus, invited air does not apply. And second, if the prosecutor had, in fact, felt that Christopher had opened the door to comment on Christopher's silence, the proper avenue would have been sidebar judge. I think that the pretrial motion to eliminate ruling should be revisited because defense counsel has opened this. Can I comment on Christopher's silence? That didn't occur here, and pretrial motion to eliminate was violated. The state has not demonstrated any of these instances of prosecutorial misconduct do not have an impact upon the trial. This court has no further questions. Whether it was the trial court's repeated prejudicial errors in allowing the state to introduce inadmissible and prejudicial evidence or the prosecutor's multiple instances of misconduct in violation of pretrial motion to eliminate, Christopher Irwin's trial was not a fair one. This court should reverse its conviction and remand it for a new trial and reserve the remainder of my time in rebuttal. Thank you. Thank you, Your Honors. Thank you. May I please record? Counsel. Good morning, Your Honors. Assistant State's Attorney Jesse Guth on behalf of the people. As far as the first issue, the standard of review on appeal is abuse of discretion in regards to the shots fired radio call. As Justice Mason pointed out, this course of conduct, which was tendered to the trial court prior to trial under people v. Jura, the court analyzed and engaged in a balancing test as to whether or not this could come in under the course of conduct hearsay exception. Okay. So let me ask you why it needs to come in six, eight times. If we need to tell the jury the context in which the officer stopped this vehicle running a red light when they're responding to a call, why does the jury need to hear it from every officer, from the State's Attorney in the opening and the closing, if it's not offered to suggest to the jury that this is the car from which the shots were fired? Yes, Your Honor. As far as the opening statements, it was simply a narrative, a preview of what the testimony was going to show. Wait, wait. Stop right there. She said in the opening that they were fleeing. Can we get an answer to that? No, but I want to, he's breaking it up. He's about to go into the officer's testimony. In regard to the opening, she said the car was fleeing. Which is how the officer was testified that day. It was a preview, a narrative of what the officer was doing. But fleeing means from something. And when they say shots fired and fleeing together, that says that there's another crime that went on. I mean, you can't say fleeing and shots fired at the same time without saying that those two are linked. Well, the officers, the purpose of that course of conduct here, State Exception, is what that officer's state of mind was when they were investigating. That's why there were multiple officers that arrived on the scene. Well, that has nothing to do with the fleeing. They saw a car speeding, right?  How do we know they were fleeing? When you see a car in the street that's going over the speed limit, how do you know it's fleeing? How could that officer know it's fleeing? The officers testified that from their state of mind, their impression of the scene, was that they observed a vehicle traveling at a high rate of speed from a block and a half from the location of the shots fired. It then goes on to explain how they conducted their investigation. Why multiple officers were needed on the scene, why they immediately asked the passengers out of the vehicle, why they asked them for their hands up. This wasn't a normal traffic stop. It wasn't as if they were responding to a call. And during this call, they just always have, during a traffic stop, each of the individuals get out of the vehicle. So once the jury understands that context, why does the State need to repeat it with every witness and in closing argument? If it's not offered for the truth, to suggest to the jury that this is the vehicle from which the shots were fired. People agree that the officers should have simply stated it, should have gotten the point across, and they shouldn't have gone that far. However, it is an abuse of discretion standard. Under People v. Jura, the entire points of the course of conduct here at State Investigation is to describe how the officers responded to the call. We know that this individual, if the gun in the front passenger area is his, the gun is fully loaded with a bullet in the chamber. It has not been fired. So aren't we going toward the impermissible suggestion when we know that if a shot was fired from this car, it wasn't from his gun? People would agree with you, Your Honor. That goes to the very, it doesn't go to the very essence of the dispute in the fact that the shots fired, the defendant wasn't charged with unlawful discharge of a weapon. Additionally, the people themselves, they put on the evidence that the gun was fully loaded at full capacity. So clearly the jury knew that. The jury knew that this defendant had not fired any shots. It's within a block and a half of that location. And there was a limiting instruction given with regards to the fourth passenger, the rear passenger on the driver's side. Therefore, yes, the jury heard that evidence. They heard exactly that the defendant, his firearm was fully loaded. Additionally, this shots fired does not describe the crime or the criminal as it does in juror. It doesn't describe a man with a gun or it doesn't describe the criminal as if he had injured. It was that the defendant had a teardrop tattoo. This call of shots fired doesn't do either of those things. That's why it fits within the course of conduct hearsay exception. That's why the trial court originally ruled the way. So why isn't it an abuse of discretion not to give the limiting instruction? If it's clearly solely to be considered by the jury to show the police course of conduct and they've heard it six, eight times, why wouldn't the trial court give a limiting instruction saying, this is the only purpose for which this evidence is admitted? Under Purcell, as well as Trotter, the people agree there should have been a limiting instruction given with regards to the call of shots fired to be used for the course of conduct investigation. However, that's why the people would argue that the evidence in this case was overwhelming. Thus, any error that may have occurred without the limiting instruction, the people have met their burden that this error was harmless beyond a reasonable doubt. You haven't responded to the fact that it was testified to over and over and over and mentioned in the opening and closing. Yes, Your Honor. It was stated by the officers. It was stated in the opening. It was stated in the closing argument. There should have been a limiting instruction given with regards to the shots fired testimony. And since it wasn't, it was repeated so often. Isn't it something more than what you're saying? The people's position is that with the limiting instruction not being given, this next step in the balancing process was the error harmless beyond a reasonable doubt. Had the people met their burden with overwhelming evidence? And in this case, there's four officers that testified that they arrived on scene, that they observed the defendant in the front passenger seat, and that as Officer Ademides, as Officer Peppers, as Officer Deering, and as Officer Escamilla had the passengers as well as the defendant exit the vehicle, their eyes were on that location, that they observed each of them get out, that no one reached into the front seat, that no one made any sudden movements, and Officer Escamilla testified credibly during trial that he observed the defendant from five feet away in good lighting conditions with his spotlight from his vehicle as well as a flashlight in his hand, observed the defendant, dipped down at the waist, and then popped back up. Minutes later, a nine-millimeter firearm is recovered from the exact location that the defendant was sitting. We don't need fingerprint evidence. We don't need all the different things that defense counsel cited in his brief as far as the proof of possession case. This was the defendant was sitting. So there was only one officer that testified to seeing the defendant make a sudden movement. Is that correct? That's correct. Okay. So I'm reading from your brief, page 20. The officer's apostrophe, that's plural, eyewitness testimony, the defendant possessed a handgun on the night in question and attempted to discard it on the floor of the front passenger seat when he exited the vehicle constituted overwhelming evidence. Is that an accurate statement of what is reflected in the trial record? Looking at all of the four officers, you've got two officers that are observing the- That he possessed a handgun. Only one officer saw the movement, right? Only one officer saw the movement. And nobody saw him possessing it. It's constructive possession case, correct? Yes, Your Honor. And you didn't say constructive. You said possessed. Yes, Your Honor. Why should we, you know, when you make statements like that, that are, I think, kind of loose with the facts, how are we to accept anything that you have in this brief? Your Honor, the charge was aggravated unlawful use of a weapon in that the defendant, while he was not in his own home or abode, he was in a vehicle and he didn't have a FOIA card and that he possessed it. But that's not it. You said the officer's eyewitness testimony that he possessed a handgun on the night in question. Yes, Your Honor. And the point that people were trying to make with that statement was, you've got Officer Escamilla who observed the defendant dip down at the waist. You have Officer Peppers, Officer Deering, and Officer Ademitis who are observing the other passengers and whether or not anyone is reaching around the seat, anyone is making any sudden movements. And it takes all of those officers' testimony to deduce whether or not the defendant was the individual with that firearm that night. It does take all the officers to show that. And while it's true Officer Escamilla was the only one that saw the sudden movement, the other three officers did testify credibly as to the facts on the night in question. And that's why it takes all four officers' testimony to show that constructive possession, that nobody else reached around, nobody else had access to the front, and nobody else made any sudden movements to the front of the black Dodging truck that night. The driver didn't have access to the front? The driver was asked out of the vehicle first. When you read the record, as each individual is asked out of the vehicle, they're all being observed. The driver exits first, then the defendant, then the rear passenger on the passenger side, then the rear passenger on the driver's side. Each officer testified to what they observed that day and whether or not the people were making sure to establish that nobody reached around and nobody, since the defendant had exited the vehicle, nobody planted a gun there. And that's why each of the officers' testimony is used to establish that that firearm that was found where the defendant's left foot would have been was the gun that he constructively possessed on that day. Can you address the mugshot issue, please? Yes, Your Honor. The people would first state that the photograph in this case is a photograph from the night of arrest. So our first argument would be that this is not a mugshot, this is simply a photograph from the night of the arrest itself. Was the jury informed of that? The testimony stated that this is how he appeared on the night in question. Well, my question is, were they told that this picture was taken that night? The officers all testified to that, yes, that this is how the defendant appeared in the night in question. That's not my question. Did they say, this picture was taken that night? Yes. All right. Does the jury need to know what he looked like from the side? Your Honor, well, no. The front profile and side profile views do indicate that there can be an argument made that this looks like a typical mugshot. People would agree with that. However, we ask that you look at the entire premise as to the underlying reason mugshots are generally inadmissible, and that's to show that the defendant had prior police contacts. It's not in dispute here. The defendant was arrested on that day. He had his photograph taken on that night. That was before the jury. The defendant was arrested on March 4, 2012. It's not in question. So he didn't suffer any prejudice from the jury seeing a photograph of him being arrested on that night. So why did it have to go back to the jury? The photograph was given to the jury, and that's simply to show that the officers each identified the defendant. There were four individuals in that meeting. There was no question about identification, right? There was never any question of identification. There really wasn't. I think that was the right thing the defendant said. That wasn't an issue at all in this case, at all. Identification was not an issue, Your Honor. However, once again, the entire premise behind mugshots not being inadmissible is to prevent prejudice to a defendant as to prior police contacts. And in this case, it was before the jury. The defendant had been arrested that night, and this was before the jury. So why was it used? I don't understand. It had nothing to do. It's not relevant. You just admitted it. So why would it be used, and why would it be given to the jury? Due to the fact that there were four people there, due to the fact that four officers did identify the defendant. So why? Yeah, right, I agree. Once again, the defendant didn't suffer prejudice as a result of this photo going to the jury. How do you know that? Because the evidence was already before the jury that the defendant had been arrested on that night. This wasn't from a prior police contact. The jury didn't see a front and side profile view of the defendant and assume that he had been arrested on prior occasions because the jury was told. This is a photograph from the night in question. But if there's no reason to put it before the jury, the front. I mean, there's an Illinois case that said, it's obvious that when you have a front and a side view, that it's a mud shot. There's no question those are called mud shots. And people have a certain idea of what mud shots mean. And it looks apparently the only reason, what's the reason here was to show him not looking as neat and clean as he was looking at the trial, wasn't it? The prosecutor didn't make a comment of that effect outside the presence of the jury. However, that comment was never set in front of the jury. That was outside the presence. I believe the case you're referring to is People v. Nelson, the Illinois case dealing with mud shots. In that case, mud shot was taken on three different occasions with enough time passing to affect how the defendant looked in the photos. That's not what we have here. We don't have three prior photographs of the defendant showing that he had been arrested months and months apart. What we have here that's different than Nelson is a photograph from the night in question where it was undisputed that the defendant had been arrested and taken into custody that night. He was photographed. And at trial, each of the officers did identify using that mud shot, using that photograph that can be argued as a mud shot as far as a front and side profile view. We're not disputing that it appears the same. But once again, the entire case law that's developed around mud shots is to prevent prejudice to the defendant about prior police contacts. We would first argue that it's not a prior police contact, therefore it's not a mud shot. But even so, even if this court feels that because it's a front and side profile view, as most mud shots are, the entire premise behind that case law and the safeguards put in place for these types of photographs is to prevent prejudice to the defendant with regards to prior police contacts. And that just simply did not happen here. As far as the defense counsel brought up, the multiple street encounters with Officer Ademaitis, on redirect examination, there was a motion in one minute talking about whether or not the people would talk about defendant's prior contacts with the Maywood Police Department. That was granted. During the cross-examination of Officer Ademaitis, the defense attorney at the trial level questioned Officer Ademaitis about whether or not what the defendant was doing during the arrest. He asked him, essentially, was he being compliant? Was he standing there? What was he doing? At the end of the cross-examination, as cited in the briefs, the defense attorney's last question was, did you make contact with the defendant that night? And Officer Ademaitis said, no, I never made contact with him. Keep in mind, Officer Ademaitis was the third officer called to the scene to assist with that fourth passenger that did have a firearm on him. On redirect examination, to clarify this point, the prosecutor did ask, intending to get the answer that the officer recognized the defendant from the night in question, it was inadvertently procured that the officer recognized him from multiple street counters. He did not say that he recognized him from previous arrests, and it was immediately objected to. It was sustained. The prosecutor did their best efforts to move on, to redirect the officer to the exact point they were trying to make. It was never argued in closing arguments. It was never brought into the case again. It was elicited, but it was elicited unintentionally. It was immediately cured by the trial court sustaining the objection to that effect. And lastly, as far as the last issue that defense counsel brought up, the commenting on defendant's post-arrest silence, the people will take the position that at the time that the defendant was standing outside the vehicle, he was being temporarily detained during a traffic stop. The driver of the vehicle could not produce a license for registration, was asked out of the vehicle. The three other passengers were asked out of the vehicle. And during the time in which the prosecutor made that comment, the defendant was not in handcuffs. He was not placed in the back of his quad car. He was not being asked questions. He was simply temporarily detained, and the prosecution was not commenting on his post-arrest silence. Thank you very much. If there's no more questions, the people would ask that you affirm the ruling of the circuit court and affirm the defendant's convictions. Thank you. Thank you. Just briefly, Your Honors. The state admits two errors occurred here. One, that the jury should have been provided instructions if it was coming in for course of investigation, hearsay purposes. That didn't occur. The state admits that. So it comes down to a harmless error analysis, again, we fall back on. No one ever saw Christopher with a gun in his hand. There's no forensic evidence. There's no inculpatory statement. You have testimony of one officer, Officer Escamillo, saying he dipped his shoulder. That's it. Second error is regarding mug shots. And the state, again, cannot demonstrate how this is harmless. Well, how can you demonstrate that it's prejudicial? That's the problem. It's a picture taken of the defendant the day he was arrested. It does not show any numbers under his chest. It doesn't say the Maywood Police Department. It doesn't say taken in June of 2010. It doesn't indicate anything other than to the jury, this is a picture of the person sitting in front of you that has been on trial all day or two days. It doesn't indicate anything other than that. So where's the prejudice? The problem is the jury wasn't provided that testimony. Despite what the state said here is that officers Deering and Ademais did not say that. They said this is how he looked on the night of the offense. And Officer Escamilla's testimony is ambiguous at best on that topic, whether this was specifically this boat, these two mug shots are from when we took it right after he got arrested. Now, you have a very experienced trial judge, former prosecutor, former defense lawyer, long-time judge, continually stating in the record, this is not a mug shot. You disagree with him? At sidebar when he's making those comments that this is not mug shots? He was convinced it was not a mug shot. As am I, by the way. Great minds think alike, I guess. What makes it a mug shot? That's what I just cannot get over that hurdle. For a juror, we must observe that police photographs, and this is from People v. Wheeler, 2nd District, 1979, we must observe that a police photograph or mug shot cannot help from being recognized by the average juror. Such photographs showing a front view and a profile view are common knowledge to the public from their exposure to the same in the news media, television, and are on the walls of the vast majority of police stations and post offices throughout the United States. So, Your Honor, I respectfully disagree. These are mug shots. Front and side profile for jurors immediately goes to that, and that's exactly what the prosecutor did in questioning Officer Ademides. Immediately after eliciting multiple street encounters against a pre-trial motion to eliminate, directly uses these mug shots, playing off that. Turning quickly to the prosecutorial misconduct, at a minimum, the prosecutor here didn't prep her witness, and it was reckless at best to elicit that. We still think it was intentional. And the prosecutor then moved right onto the mug shots. Your Honors, if you have no further questions, we ask that you reverse Christopher's conviction and remand the case for a new trial. Thank you for your time. Thank you. We'll take the case under advisement. Appreciate both countries' arguments today. And you're excused, and we'll call the next case. Thank you.